Our next case is Estellas Pharma v. Sandoz, et al., 2023, 2032, 63, and 89. Good morning, Mr. Hughes. Good morning. Thank you. May it please the Court. There are two principal issues in this case. The first is the District Court's violation of the party presentation principle in its disregard of the forfeiture of the Section 101 argument. The second issue is the substantive results of the Section 101 argument. Were the Court to reach that? I'd be happy to take those in either order. I'll begin with the forfeiture of party presentation unless the Court has other direction. Can I just ask you about that? Do we need to find that 282 sets forth a pleading requirement that each defendant has to affirmably plead, or is the party presentation rule and forfeiture rule sufficient for a big attorney? The latter is sufficient, Your Honor. I think all the Court needs to identify is the usual order that parties need to present to the Court, which issues they wish the Court to resolve, and that when you go through a trial, you have 250 pages of post-trial briefing. At that point, it's not proper to inject an entirely new defense that the patent holder never had an opportunity to present evidence on. In other words, this isn't just a due process violation where we send it back for additional briefing and oral argument on this 101 question. The 101 question is out? Yes, I think 101 is out of the case, Your Honor, because of party presentation and forfeiture. The parties had their opportunity to select which invalidity grounds they wished to present to the Court. It's too late to amend complaints and do stuff like that, right? I think it is too late, Your Honor, at this point. I think this late development of this case. Now, on remand, of course, whatever happens on remand will be up to the district court at that point. There will be changes to the case, I imagine. The product is now launched, so there will be damages and other issues in this case that will be appropriate upon remand. So I think those issues will be left to the district court, but it is certainly our view that the parties have presented. Not remand on the 101. The case is still pending. He hasn't decided it. So, of course, there's more for him to do.  There's nothing related to this appeal if you were to prevail. Oh, yes, of course, Your Honor. The issues about 112, for example, are certainly still alive before the court. So if the court remands, there are many issues to be resolved. Just 101 would not be part of this case. We think that issue has been forfeited in the course of this litigation, and it was improper for the district court under party presentation principles to resurrect an argument. What about your reassignment question? You know reassignment is viewed unbelievably sparingly by this appellate court. I think I've done it once in 22 years. So what justifies? And Third Circuit law is pretty tight, too. So what on earth would justify reassignment in this case? I appreciate all of that, Your Honor, and I want to be clear at the outset. The Third Circuit standard does not require us to show actual bias, and our argument is not sounding in actual bias. It's sounding in the appearance what an objective observer would view. I think there are four components that together combine to make this a rather extraordinary case. The first is we think it was rather unusual conduct that the district court very clearly took over the proceedings in this case and injected a 101 defense that had been long ago forfeited, and explicitly said that Estellas wouldn't even have the right to present argument or evidence on that issue. We think that's extraordinary. But the Third Circuit has said, you know, errors of law. I mean that's where this issue comes up. If we side with you, it was an error, and it was an error of law, and he didn't have the ability to raise a new issue at this stage of the proceedings. But the Third Circuit has clearly said those kinds of things don't constitute sufficient basis for reassignment. Well, two responses, Your Honor. First, I think this is the whole panoply of these four features I'm going to look to. But second, the United States VWAC, the Third Circuit did say that very unusual course of proceedings before a district court is a factor that the courts consider for reassignment. And I want to be clear, I'm not sure if any one of these standing alone work, but when you look at them holistically, I think this makes a very unusual case. So the second after the takeover was the district court, in response to defendant's Rule 52b motion, expressed frustration that they were not picking up on what he said were the hints that he provided during litigation. I think it's unusual for a district court to say that he was actively providing hints to a party as to what he thinks the arguments that they should have made. I think that combines to enhance the unusual nature. The third component here is that there are rather unusual comments about the pharmaceutical industry colluding over patent protection and challenges to the PTO, and disparagement of broad categories of pharmaceutical claims that I think could lead an objective observer just to have a question as to if there is an open-mindedness and a neutrality as to... You're saying he was trying the industry rather than just the case. Your Honor, the fact that he cited a piece of litigation that has nothing to do with my clients and nothing to do with this product for a disparagement of the industry, suggesting that there is... Well, does that suggest that he couldn't try any of these cases? He's got a docket full of pharma cases. Well, Your Honor, he's sitting by designation. We are focused on this particular case where these comments arose, but comments... And they weren't his own comments. I mean, he was citing... I mean, it wasn't a direct quote, but he was citing to another district court's opinion in a case, right? Citing to a decision that is about the industry that has no tie to my client, no tie to the product at issue, no tie to any conduct alleged, but just saying there has been other litigation about this industry, and that informs why it is that I am invalidating these patent claims because I think there has been collusion, and he claims the PTO is turning a blind eye in approving these claims. Those are powerful statements that I think, from our perspective, lead an objective observer to wonder, is there, if the court has concerns about this industry and these claims, is there neutrality and open-mindedness on remand? The fourth point... What's the standard, again, that applies in the Third Circuit in this regard? So, in the Alexander case, the court explained the key issue is the appearance of neutral, impartial administrator of justice. From whose perspective? The public, I assume. Yes, Your Honor, from an objective observer. And the court was very clear that it does not require actual bias or prejudice. The court decisively said it is not the test. It's the appearance of neutrality. Does the public have an objective appearance that there is a neutral arbiter who will look to the party's arguments and just decide them on the merits of the party's arguments without bringing in perspectives about the industry more broadly or other issues that could lead to a question of that neutrality or that impartiality? And I'll also point, in C.R. Bard, this court... I previously reversed the district court for injecting a Section 101 argument that the parties had not raised. So, we also do have a pattern of conduct of a court... Well, let me ask you about that. I mean, in this case, you already had a five-day trial with this judge, and I assume there was pleadings and there was lots of back-and-forth, and I didn't see any reference to anything the district court said or did other than the one where you say he pushed them to do this. He gave them a hint. But anything in his conduct, his rulings on anything, that suggests anything problematic? I mean, having... Right? Am I right about that? Your Honor, I think we are principally focused on the really extraordinary nature of this post-trial ruling that, you know, from out of nowhere, injects an issue in the courts. Okay, so I'm right. Yes, Your Honor, and to be clear, we recognize this is an extraordinary request of asking for reassignment. We wanted to... Speaking of reassignment, I'm sorry to interrupt, but does... Conceivably, reassignment would require a whole new trial. I mean, you've already had a trial here. So this district court... And you've filed motions in the district court. Conceivably, a reassignment might require a whole new trial, right? Well, Your Honor, and that was the point that I was getting at earlier. That concern about efficiency is a bit mitigated in this case because when this was tried at the time, it was purely a bench trial because it was pre-launch. As the court is aware from some of the motions practice, the product has now launched and is on the market, so there will additionally be claims for damages, which could invoke a jury trial right on remand. So there is a likelihood that there will be significant additional proceedings occasioned by the launch of the product and a claim for damages. If there were a remand, it would be only on 112, wouldn't it? I think that's right, yes, Your Honor. What about infringement? Was the trial on infringement and 112? I apologize, Your Honor. Infringement would also be at issue. There are developments in the case, though, since then. At the time of the trial, one of the key infringement proofs was that the product that had been produced by defendants was expired, and so one key issue was the use of expired product to demonstrate infringement. In related litigation, unexpired samples have since been produced, so there will be discussion with the district court, I imagine, as to that evidence that now is available that was not available during the trial. Were there fact witnesses and expert witnesses at the trial? There were, yes, Your Honor. So there might be credibility determinants. But to that point, Your Honor, I think some of those questions are now going to change because there has been production between the parties of unexpired samples. So the key infringement dispute, the complexion of that, I think, on remand is going to look very different. And factual disputes now, because we have a damages component and a jury trial right, will likely be resolved by a jury rather than the district court sitting in a bench trial. So the complexion of the case does look different. I think that just substantially mitigates against efficiency concerns on reassignment. In addition, though, we do believe that our client has a right to have a neutral objective observer, and even if there are efficiency concerns, we still think that ensuring the fair process is important. Are there any options other than just a reassignment? Your Honor, as we read this Court's cases, if it thinks the circumstances warrant reassignment would be appropriate, I don't think there would be other remedial options available. And given the case will take on a new chapter with damages, I do think it would not be substantially disruptive for reassignment in these circumstances. And we do think, we recognize it's an extraordinary ask, but we think these are extraordinary circumstances when you factor together the panoply of statements and conduct that occurred here. What's the relevance of the compound being expired? Is it that it might degrade and therefore no longer be infringing? Or is that otherwise an FDA issue? It was the first thing you said, Your Honor, was because the samples were expired, there was a question of how you do the, what the expiration does to the dissolution testing and how you can use expired samples to demonstrate that they have the claimed dissolution performance when they were expired versus when they were active. And there was a big expert dispute about that. But now that they're unexpired samples, that will be obviated. Do we have any authority in your view to address the Section 101 issue or any part of it? Your Honor, we think that that issue is not in this case and the Court need not resolve it. If the Court does resolve this, these are pharmaceutical compositions. They're synthetic, non-made human compounds. We think the Court's decision on natural alternatives clearly states this is patent-eligible subject matter and it would be extraordinary for the Court to say a synthetic, non-natural composition or matter claim is outside patent eligibility. No court case has remotely held that besides the District Court here. And we don't, we think this is a, you know, if the Court reaches it, that is a straightforward question. But the Court would only reach it if it found what the judge did here was correct. I don't think the Court need reach the question. Yes, Your Honor. And we'll save the remainder of your time. Thank you, Your Honor. Mr. Zimmerman. Good morning, Your Honor. Bill Zimmerman of Kenobi Martins. May it please the Court. In this unusual case, Astellas made repeating, striking, unexpected admissions regarding the scope of its invention that led the District Court to address 101. The District Court did not err either in addressing it or in its rulings. So, first I'd like to start with the procedural issue. There are three Supreme Court cases, Slauson, Dunbar, Brown. Yes, they're from the late 1800s, but they all say the Court has the authority to address validity when the patent is void on its face. They haven't been abrogated. They've never been called into question. There's no legislative history that says they're not good law. So, under the Supreme Court precedent... What do those cases say or what's their context with respect to party presentation? They didn't address party presentation, but in all of them... Can I assume that in those cases, the parties were able to present their views? They were decided on issues that hadn't been raised, hadn't been briefed. So, no due process concern was raised, no party presentation issue was raised. And plaintiffs say that this was abrogated by the 1952 Act. I'd like to point the Court to the Howes case. It is a 1982 Second Circuit case directly on point. There, the intervener pled 101. 101 was not addressed during the trial. It was not briefed by any of the parties. The Court decided the 101 issue post-trial on a judgment notwithstanding the verdict ruling. And the plaintiff, the patentee, on appeal, said this was procedurally improper. The Second Circuit said Section 101 deals with the subject matter of patents, and as such, it is always open to consideration of the Court whether the point is raised in the answer or not. And so, the Court that has addressed this issue directly on point... Okay, well, that Court did it, and you refer to the cases at the Supreme Court that are over 150 years old. And I think I'm characterizing your friend's answer to those assertions, which is the 1952 Patent Act, which followed those Supreme Court cases and says very clearly, on this point of law, the following shall be defenses in any action involving the validity of the patent and shall be pleaded. And that includes all the invalidity. That statute was not in effect 150 years ago. It was in effect in 1982 when the Second Circuit House case was decided and cited back to those Supreme Court cases. Did it cite to the 1952 statute? It cited... It didn't directly cite to it, but it cited 101, which was a product of that. And so... Yeah, but the statute is sort of a centrepiece of what we do here. Exactly. And so, there's no indication in House that the 1952 Act changed Slauson, Brown, Dunbar. Well, do you disagree that the 1952 Act says that these defenses in any action involving validity of a patent shall be pleaded? And they were pled in this case, Your Honour. The answers contain affirmative defenses under 101 and Lupin's answer, entry 49 in the docket, paragraph 21 of the counterclaim, has an express statement under 101. They weren't pursued at trial, but once they're pled, the district court has the authority to address 101. And here, there were stunning admissions. Estellis didn't... So they were pled as a defense? They were pled as an affirmative defense. Where was that in this? In Zaitis' answer. The answers are not in the record. Oh, OK. But I can tell you, it's DI 60, which is Zaitis. It's the second affirmative defense, and I'm happy to send copies of the answers to the court. And for Lupin, it's entry 47. Well, was it cited in the red brief? Did you make this point? It was not, Your Honour. So you didn't tell us that this was pled? We didn't believe that pleading it in any way affected the district court's ability to raise it under Sloss and Dunbar-Brown and the subsequent Hughes case. It would exalt form over substance. If the court has the power to address it, whether it's pled or not shouldn't make a difference. But here it is pled. So that shouldn't be in dispute. It just seems odd. I would like to turn to the admissions we actually have from... Mr. Zimmerman, you mentioned this so-called admission. That seems to be a loose comment relating to the underlying nature of the invention, but what counts is the claim, the claims. The claims are to a pharmaceutical composition, which is very clearly statutory subject matter. Your Honour, the first step is the directed to inquiry. Here's what Estellas told the district court. It's at page 7452. The invention is directed to the use of a well-known, well-established, sustained hydrogel formulation that with the claim dissolution profile overcomes the food effect. They have told the court that the advance over the prior art is the dissolution limitation. They've gone so far as to tell the district court at page 7415 and 16 that the sustained release systems are mere background art. They went on to say the inventive concept of the 780 patent was discovering the dissolution rate that would address the food effect and achieving it using previously known formulation technology. Did they file an oath of declaration when they filed a patent application saying, this is our invention, we made this invention? They did. And they claimed it as a pharmaceutical composition? They did, but a party shouldn't be allowed to go to a district court. And for purposes of avoiding the 112 problems with the patent, tell the court that the sustained release piece is background art. You don't have to worry about that. It was well-known, routine, conventional. The drug mirror background was known in the art. It was known to treat overactive bladder. The only piece of our claim left is the dissolution limitation. But for 112 purposes, you can assume all of this is known, but we can ignore it for 101 purposes. The district court was led by Estellas' statements that were specifically couched in 101 language to this conclusion. And Estellas, throughout its brief, never addresses any of those admissions. Aren't the admissions equally relevant to an obviousness case? They would be. And you dropped your obviousness. We did. Given the limited amount of time for trial, the parties narrowed it to 112 defenses and non-infringement issues. So you officially dropped? It came as a surprise to me when you said that you had pled 101 as an affirmative defense. Did you officially drop that, too? It was never officially dropped at any point. There's no document that says 101 is dropped. There's no document memorializing it. 101 was not presented at trial, and it's not in the pretrial order. But there's a stipulation dropping the obviousness defense. But that's why this case is so unusual. Once the obviousness case went away, Estellas made stunning admissions at trial that everything in their claim was known. They even go so far as to say, the invention is directed to technology that was well-characterized and routine. And why wasn't the case decided on 103? Because 103 had been dropped. Why? You dropped 103. 103 was dropped by the parties via stipulation when the judge- It wasn't dropped. It was your assertion. So you were the ones that pulled it, right? Yes. Yeah. But what does it matter at this point? When we look at the decision on 101, and in my view at least, it's clearly erroneous on its face on many points. But what do we do about that? If the court were to say the 101 ruling can't withstand scrutiny- Why couldn't we look at what the claims are directed to and say that they're not directed to patent ineligible subject matter? You would have to have the threshold issue of the issue being before the court. And so if you're going to say it was procedurally proper, then you could get to the substance, which is what happened in the House case. The other alternative would be to say it's procedurally improper, which would lead to a remand for trial- well, it doesn't have to be a trial- for the court to address infringement and the 112 defenses. We disagree that there would be a need for a new trial. The evidence has all been presented. The district court could simply rule. Well, that's up to the district court, though. It is. They feel like they're going to do determinations. I just wanted to point out that there is a dispute about the characterization that there's new evidence and there would have to be a jury trial and damages. All of that would be in the discretion of the district court, given that the defenses have already been presented and he's had a trial. I would like to talk briefly about reassignment. Even if the court were to say the judge was substantively wrong in its 101 analysis, and we don't believe that to be the fact given the admissions that Astellas made, this is not the type of egregious trial that leads to reassignment. It's a remedy that's granted very sparingly. The only thing that Astellas points to is the decision. And that decision, in view of the admissions made by Astellas, is not outside of the bounds. But if the judge has shown that he's biased against the pharmaceutical industry because of what he believes to be their behavior, isn't that grounds for reassignment? I would say no, Your Honor. If you read that in context, that was not directed at Astellas. What's the point? There was a ruling under 101. We went to the district court and said, we would like you to address all of the other issues so that we can have a full appeal. And we aren't sure that the 101 issue is properly raised. We'd like you to clarify that. Any ire in that opinion was directed at the defendants for failing to raise what he thought was a clear issue in view of the trial presentation, as well as our asking him to revisit all of these other issues. Go ahead. The part of that, those comments that we're looking at, they were not limited to within the four walls of the courtroom. I mean, they're limited to the general public, to the pharmaceutical industry as a whole. There was a cite to one antitrust case and some discussion of patenting sustained release systems. But the court did not rule based on any of those. He cited the Mayo case. He cited the Alice case. He showed he had a clear understanding of the claims and addressed the patent law issues very clearly. And then in the C.R. Bard case that was referenced where he raised 101, on remand, he addressed every issue presented in a full, well-reasoned  There's nothing to suggest he has any bias toward either party or that he can't address the defenses sufficiently on remand. And as for the need judicial economy, he not only has this case, he has a subsequent case that was brought on another patent by Estellas with respect to the lupin and Zytus defendants. He's got the 780 patent cases asserted against Assent, MSN, and other defendants, and presumably the 451 cases, another patent that will be filed. Well, I'm a little baseless for thinking there may be a problem. No, he has spent years with these cases and heard all of the testimony, has a number of them. A reassignment would disrupt not only our cases, but a string of cases. And it would automatically necessitate another trial in this matter, where a trial wouldn't be necessary because the evidence is already before the court. So does the panel have any further questions? There's no doubt that this is not a pleasant matter or that there may be a clear answer. But doesn't this court have an obligation as well to address the demeanor of the judiciary, especially with respect to the cases that we hear? He has tried a number of cases sitting by designation in Delaware. He's ruled for branded companies. He's ruled for generic companies. The isolated statement doesn't suggest he can't rule without bias. Well, I'm not defending the statement, but the statement equally was averse to both brand and generic. Both parties. Right, it didn't distinguish between the two. It went after both of them based on the antitrust collusion in the other case. And this is not a case where there have been repeated rulings that are outside the norm. There is no pattern of conduct. There were no heated moments at trial. It doesn't meet any of the standards set forth in the Third Circuit's case law for reassignment. Thank you. Thank you, Mr. Zimmerman. Mr. Hughes has two and a half minutes for rebuttal. Thank you, Your Honor. I think that the case can be resolved on the procedural issue. Nothing overcomes the usual workings of party presentation or forfeiture. Defendants just mentioned their answer. They didn't argue it in their brief, and for good reason. It's boilerplate in their answer when you look at the answer. It just says defense under Section 101, 102, 103, 112. There's no development of that. And do you agree that Rule 16 controls the course of action? It says the pretrial order controls the course of action. So even if they hadn't withdrawn the defense, if it wasn't in the pretrial order, it would not? Yes, Your Honor. It was clearly out of this case, and it would be quite damaging to patent law if every patentee has to take prophylactic efforts to defend against the boogeyman in the closet of a 101 argument that's never been invoked by the defendant. That's just not how it operates. I don't think the court should reach the issue, but on the substantive point, there's an argument about concessions. Just a few points about that. First, defendants never argued this at trial. They never argued this in their post-trial. They only think there's clarity around these concessions now after the district court's decision. Rather, when the district court issued this decision, instead of defending it, defendants asked the district court to change the decision and to actually decide the 112 issues. They had it right then in saying the 112 issues were what the focal point of the case should be, not the 101 issue. But on the substance of it, there's no getting around. These are composition of matter claims. These have to be within patent-eligible subject matter. Further, as to those omissions, I think at the court looks, there's some mischaracterization going on here. Because what Estellas is talking about is not the invention as a whole. It's talking about using known techniques applied to a very novel discovery. And then that discovery, combined with techniques, creates novel, useful pharmaceutical compositions. And when the court looks at the decision in rapid litigation management, that's precisely the fact pattern there. And those are more challenging claims, because those were method claims, not the composition of matter and pharmaceutical claim. One just final point about the district court's criticism. It's true that the district court said that there was collusion, in his view, among branded and generic. But the upshot of that statement was to be adverse to patent protection. What he says in very clear terms is he thinks even the PTO is issuing patents that there should not be. So although there is- He didn't say that, right? He did assert that the PTO, he made a challenge to the PTO. in his decision. So the PTO is swept within his criticism. And the upshot of the criticism is that it's markedly a thumb on the scale against patents in this space. And that's what we think leads to at least an appearance of concern here. Thank you. Both counsel, the case is submitted.